WILLIAM IRIZARRY CUEBAS, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREAS-URER OF PUERTO RICO, Intervener.

Nos. 221 and 223.   Argued January 12, 1950.—Decided April 6, 1950.

*J. Alemañy Sosa* for petitioner. *Vicente Géigel Polanco, Attorney General,* and *Elmer Toro Lucchetti, Assistant Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

On March 13, 1940 William Irizarry Cuebas filed his income tax return for 1939, declaring income of $6,886.45. On September 24, 1945 the Treasurer notified the taxpayer with a deficiency of $3,626.62, without any penalties. The notice recited that in 1939 Irizarry had made bank deposits of $60,684.53, of which he had not accounted for $55,948.86; and that the Treasurer believed that half of the latter sum— $27,974.43—was undeclared income from the operation of a *bolita* game by Irizarry.[1]

On October 15, 1945 the taxpayer moved for reconsideration of the $3,626.62 deficiency. On October 22, 1945 he also

---

[1] See *People* v. *Irizarry,* 57 P.R.R. 180–186.

filed a complaint in the Tax Court attacking this deficiency. Despite the fact that the motion for reconsideration was not filed within the fifteen-day period provided in § 57 (a) of the Income Tax Act, the Treasurer entertained it and held an administrative hearing. On November 27, 1945, as a result of the hearing, the Treasurer notified Irizarry with a $9,368.11 deficiency. This time the theory of the Treasurer was that $39,011.41 was not accounted for and was taxable income. In addition, for the first time the Treasurer imposed a penalty for fraud.

On December 26, 1945 the taxpayer filed a "supplemental complaint" in the Tax Court. After further steps not necessary to recite here, the Tax Court dismissed the proceeding for lack of jurisdiction. It held that the $9,368.11 notice was an entirely new deficiency, and that it was therefore not the final administrative decision which was required to give the Tax Court jurisdiction pursuant to § 57 (a) and § 4 of Act No. 169, Laws of Puerto Rico, 1943. We affirmed the decision of the Tax Court on December 23, 1947 in *Irizarry* v. *Tax Court*, 67 P.R.R. 896.

However, we pointed out in our opinion that the Treasurer had erroneously informed the taxpayer in the notice of the $9,368.11 deficiency that in the event of his disagreement, he could file a complaint in the Tax Court as provided by law, provided he filed the bond required by § 57. We therefore indicated our view that under all the circumstances the Treasurer had misled the taxpayer and therefore that the Treasurer should (p. 901) "again notify the taxpayer of the deficiency which by mistake he notified as an administrative decision, and then the petitioner may apply for a reconsideration and the proper administrative hearing. The Treasurer is bound to do so, inasmuch as he induced the taxpayer to commit the error which deprived the lower court of jurisdiction to take cognizance of this case."

We now come to the events which gave rise to the present proceeding. In view of the foregoing, the Treasurer became concerned that seven years would expire before the deficiency was assessed.[2] He therefore made a jeopardy assessment of the said deficiency on March 6, 1947 pursuant to § 57(c) of the Income Tax Act. The taxpayer thereupon filed a complaint in the Tax Court, following the procedure laid down in § 62 of the Act. After the Treasurer answered, Irizarry moved for judgment on the pleadings. The Tax Court not only denied this motion, but also entered judgment in favor of the Treasurer. We granted certiorari to review this decision.

■ The first question to determine is if the Treasurer was authorized to make a jeopardy assessment under the circumstances of this case. Section 57(a) of the Act provides that if the Treasurer determines that there is a deficiency, he shall notify the taxpayer, who is given the opportunity to dispute it administratively and judicially. Section 57(b) implements § 57(a). It provides for the various situations in which, once the taxpayer is notified of the deficiency under § 57(a), the Treasurer may ordinarily levy and collect the tax. Section 57(b), as amended by § 6 of Act No. 23, Laws of Puerto Rico, 1941, Special Session, reads as follows:

"When the taxpayer does not file an application for reconsideration, or when, after said application is filed and passed upon, the taxpayer does not resort to the Court of Tax Appeals of Puerto Rico, in both cases within the terms and in the manner established in the preceding subdivision (a), the Treasurer shall levy and collect the deficiency determined by him with interest at the rate of six (6) per cent per annum on said deficiency from the date prescribed for the payment of the first instalment of the tax. If an appeal is taken to the Court of Tax Appeals of Puerto Rico in the manner provided by this Act, and said court determines that there is a deficiency, the amount determined by the court shall be levied by the Treasurer with interest at the

---

[2] See § 60(a)(1) of the Income Tax Act; *Buscaglia, Treas.* v. *Tax Court,* 67 P.R.R. 650.

rate of six (6) per cent per annum from the date prescribed for the payment of the first installment of the tax, and shall be fully paid by the taxpayer upon order of the Treasurer."[3]

We thus see that under the ordinary procedure when a taxpayer is notified of a deficiency under § 57 (a), the following may occur: (1) the taxpayer may not move for reconsideration within fifteen days; (2) the taxpayer may move for reconsideration, the Treasurer by administrative decision confirms the deficiency and the taxpayer does not resort to the Tax Court; (3) the taxpayer moves for reconsideration, the Treasurer by administrative decision confirms the deficiency after a hearing, the taxpayer sues in the Tax Court, *and that court determines the existence of a deficiency*. The Treasurer must await the result of one of these three alternatives before he may levy and collect the deficiency under § 57 (b).

█ █ In the present case, as we have seen, originally the Treasurer notified Irizarry with a deficiency under the ordinary procedure pursuant to § 57 (a). The taxpayer did not move for reconsideration within fifteen days. Consequently, the Treasurer could have proceeded forthwith to levy and collect the deficiency. But instead the Treasurer chose to entertain the motion for reconsideration which Irizarry filed twenty-one days after he was notified of this deficiency. And as a result of the hearing the Treasurer sent him a new deficiency. We have held (1) that this new deficiency began the proceeding all over again, leaving everything which had gone before without effect; and (2) that as a consequence when the taxpayer filed a complaint in the Tax Court attacking the new deficiency without moving for reconsideration by the Treasurer, the Tax Court lacked jurisdiction. *Irizarry* v. *Tax Court, supra*. But at no point in the proceeding did the Tax Court determine a deficiency as contemplated by

---

[3] Sections 57 (a) and (b) were amended by Act No. 230, Laws of Puerto Rico, 1949, subsequent to the date of the jeopardy assessment herein and do not affect this case.

§ 57 (b).[4] And we in effect directed the Treasurer to make still another new deficiency because of the misleading information contained in the $9,368.11 deficiency.

■■ The foregoing facts show that at this stage of the case no deficiency had as yet been assessed. And since the period of seven years for such assessment provided in § 60 (a) (1) would expire on March 13, 1947, the Treasurer made a jeopardy assessment on March 6, 1947 under § 57 (c) and the taxpayer proceeded in the Tax Court pursuant to § 62.

The gist of the taxpayer's argument is that the Treasurer may not make a jeopardy assessment when such a deficiency had as here already been notified pursuant to § 57 (a), particularly when as here the Tax Court had already entered an order.

Section 57 (c), as amended by § 6 of Act No. 23, Laws of Puerto Rico, 1941, Special Session, reads as follows:

"If the Treasurer believes that the assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess said deficiency and make the notice and demand for the payment thereof. In such case assessment shall be made (1) without the notice provided for in subdivision (a) of this Section, or (2) before the expiration of the fifteen (15) days granted by said subdivision (a) for filing an application for reconsideration, or (3) at any time prior to a resolution on any application for reconsideration which may have been filed, or (4) before the expiration of the thirty (30) days following the date on which the application for reconsideration granted by said subdivision (a) for appealing to the Court of Tax Appeals of Puerto Rico, is passed upon, or (5) at any time before the resolution of the Court of Tax Appeals, if the taxpayer has appealed to said court. If the taxpayer does not file a claim in abatement as provided in Section 62, the deficiency so assessed (or, if the claim so filed

---

[4] Even Irizarry was aware of this. He filed his petition for certiorari in this Court in the case decided in 67 P.R.R. 896 without paying any tax under protest precisely because the Tax Court had not determined a deficiency. This was in accord with *González Padín Co.* v. *Tax Court*, 67 P.R.R. 204; *Clínica Díaz García* v. *Tax Court*, 65 P.R.R. 88.

covers only a part of the deficiency, then the amount not covered by the claim) shall be paid upon notice and demand from the Treasurer."

The first sentence of § 57 (c) gives the Treasurer broad powers to *assess* a deficiency, as distinguished from merely notifying it, if he thinks the circumstances warrant it. As we pointed out in *Ballester* v. *Court of Tax Appeals*, 60 P.R.R. 749, 754, ordinarily the courts "cannot inquire into the action of the Treasurer in making a jeopardy assessment."

However, the taxpayer argues that § 57 (c) establishes five situations in which a jeopardy assessment may be made, and that the instant case does not fit into any of them. On the other hand, the Treasurer argues as follows: the five situations recited in § 57 (c) are merely periods during which the Treasurer cannot act under § 57 (b). But this does not mean that the Treasurer is confined to making a jeopardy assessment only during those periods. On the contrary, the first sentence of § 57 (c) is sweeping in its terms and clearly evinces an intent on the part of the Legislature to authorize jeopardy assessments *whenever necessary* "in such emergency situations as the imminent flight of the taxpayer, disposition by him of his property, or the running of the statute of limitations." *Ballester* v. *Court of Tax Appeals, supra*, p. 773. Consequently, even if the jeopardy assessment herein was not made at one of the five stages recited in § 57 (c), it cannot be challenged.

We need not determine in this case whether we agree with the taxpayer or the Treasurer as to the scope of § 57 (c). *Cf.* 9 Mertens, Law of Federal Income Taxation, §§ 49.105–49.110, pp. 91–97, § 50.16, pp. 210–11. Even if the argument of the petitioner that a jeopardy assessment must be made at one of these five stages is assumed to be correct, this jeopardy assessment was not improper. Irizarry argues that the jeopardy assessment here came *after* the order of the Tax Court. But the order contemplated by § 57 (c) (5) is an order deciding the case on the merits; such an order, if it is

in favor of the Treasurer, requires the taxpayer to pay the deficiency before he may resort to this Court.[5] If § 57 (c) (5) contemplated orders other than orders on the merits, we would have an absurd situation. Under the petitioner's theory, a jeopardy assessment could not be made under § 57 (c) (5) because the Tax Court had already entered an "order", although it was merely one denying jurisdiction. But the Treasurer by the same token could not levy and collect the deficiency under § 57 (b) because § 57 (b) provides that the Tax Court must *determine a deficiency* for it to be applicable. We cannot agree that the Legislature meant any such absurd result; namely, that the deficiency could not be assessed at all.

Here there was no order on the merits by the Tax Court. On the contrary, the order of the Tax Court, affirmed by us, declined to hear the case for lack of jurisdiction. And as already noted, in 67 P.R.R. at 901 we in effect required the Treasurer, in view of the misleading character of the $9,368.11 deficiency, once more to start all over again and to notify the taxpayer with still another new deficiency. Instead, the Treasurer made a jeopardy assessment. This he could clearly do under § 57 (c) (1). Consequently, the jeopardy assessment herein was valid under § 57 (c) (1), even if it is required to fit into one of the five stages recited in § 57 (c).[6]

The taxpayer argues that to permit the Treasurer to make a jeopardy assessment in this case deprives him of his right

---

[5] Section 57 (c) (5) was amended by Act No. 230, Laws of Puerto Rico, 1949, which was enacted after this case arose, to read as follows: "(5) at any time before the resolution of the Tax Court of Puerto Rico *on the merits of the case* if the taxpayer has appealed to said court." (Italics ours.) We have reached the same result under the earlier statute; but this amendment eliminates any possible doubt as to the problem in the future.

[6] At the close of our opinion in 67 P.R.R. 896, in effect requiring the Treasurer to notify a new deficiency, we pointed out that if the return was fraudulent as alleged by the Treasurer, the seven-year limitation period of § 60 (a) (1) would not bar the deficiency. But that can scarcely be read, as the petitioner contends, to bar a jeopardy assessment within the seven years.

to obtain review by this Court of a final order of the Tax Court on a deficiency notified prior to the jeopardy assessment. The best answer to this argument is what has happened in this case. After he received the jeopardy assessment, the taxpayer acted pursuant to § 62 which gives him the right to go to the Tax Court and thereafter to this Court. And as hereinafter noted, we are remanding the case for a determination on the merits of the alleged liability of Irizarry for the amount fixed in the jeopardy assessment.

■ It remains to determine if the Tax Court acted properly in entering judgment on the merits in favor of the Treasurer in passing on the motion of the taxpayer for a judgment on the pleadings.

We agree with the Treasurer that if one party makes a motion for judgment on the pleadings, the court searches the whole record and gives judgment to whichever party is entitled to it. Rule 12c, Rules of Civil Procedure; Motion for judgment on the Pleadings, 3 Fed. Rules Service 676. But a motion for judgment on the pleadings may not be granted in favor of either party if the pleadings raise a genuine issue of fact. *Boulon* v. *Pérez*, 70 P.R.R. 941; *Hettinger & Co.* v. *District Court*, 69 P.R.R. 128; *Fernández* v. *District Court*, *ante*, p. 149. And here the complaint clearly shows that, in addition to attacking the authority of the Treasurer to make a jeopardy assessment, the taxpayer asserts that on the merits he does not owe the deficiency in question.[7]

■ The Treasurer attempts to meet this point by asserting that the Tax Court holding was tantamount to a ruling

---

[7] In paragraph 9(*b*) of the complaint, after reciting receipt of the first deficiency, Irizarry alleges that at the administrative hearing thereon "the taxpayer accounted for the source of the money that he allegedly received as profits from *bolita*. . .", and that the Treasurer notified the second $9,368.11 deficiency despite the fact that "in said administrative hearing there had been overwhelmingly established the source of each and every one of the bank deposits made by him in 1939." The latter allegation is repeated in paragraph (*d*) in contesting the penalty imposed for fraud.

Paragraph 9(*h*) of the complaint reads as follows: "That the bank deposits made by the plaintiff during 1939 and which were credited to his

that the complaint did not state facts sufficient to constitute a cause of action. But if that were the extent of the Tax Court's ruling, it certainly would have granted Irizarry leave to amend. Instead, the Tax Court incorrectly asserted that Irizarry in his complaint confined himself to attacking the authority of the Treasurer to make a jeopardy assessment and did not dispute the deficiency on the merits. In entering a final order in favor of the Treasurer the Tax Court erred precisely because it shut the taxpayer off from establishing the contention which he raised in his complaint against the jeopardy assessment on the merits.

The order of the Tax Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández did not participate herein.

account, were in part carried over from his current account from the previous year 1938 and the rest of his receipts were from his business of renting automobiles; his dairy; the purchase of cattle for slaughter; the purchase of native fruits and the sale of houses, loans and mortgages."

Paragraph 9 (i) alleges "That the only bank in which the taxpayer made deposits during the said year 1939, was the Banco Crédito y Ahorro Ponceño, Mayagüez branch. . .". Paragraph 9 (i) then recites in detail the balances in this account at the end of each month of 1939. It concludes by alleging that "Between the sum of $4,790.22 which was carried over in the said account from 1938 and the sum of $17,534.30, the largest balance therein in May 1939, there exists the difference of $12,744.08", and that "The curve which the deposits and the disbursements in the said accounts reflects, clearly demonstrates the operations of a business man which is what the taxpayer has been all his life."